| | | |
|---|---|---|
| **NICHOLAS STRAHL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | 4:07-cv-61-AS |
| | ) | |
| **TRUSTEES OF PURDUE UNIVERSITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION & ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment. (Docket No. 12). Plaintiff, Nicholas Strahl ("Strahl"), filed this action on October 16, 2007, alleging that his alma mater, Purdue University ("Defendant" or "Purdue") violated Title II of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973. The crux of Strahl's claims are that Purdue failed to adequately accommodate his disability, which resulted in him having to attend school for an additional year at great financial and emotional cost to himself. A hearing was held on the matter on March 16, 2009. For the reasons that follow, Purdue's Motion for Summary Judgment is **granted**.

## I. Standard of Review

The purpose of summary judgment pursuant to Federal Rule of Civil Procedure 56(c) is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is appropriate when there is "no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine

issue of material fact exists "only if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." <u>Wade v. Lerner N.Y., Inc.</u>, 243 F.3d 319, 321 (7th Cir. 2001). Additionally, in deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986); <u>Schuster v. Lucent Tech., Inc.</u>, 327 F.3d 569, 573 (7th Cir. 2003).

## II. Background

Strahl suffers from Asperger's syndrome–an Autism Spectrum disorder that can manifest itself in "severe and sustained impairments in social interaction . . . and the development of restricted, repetitive patterns of behavior, interests, and activities." American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u> 80 (4th ed. 2000).

In 2002 Strahl began his freshman year at Purdue University in West Lafayette, Indiana. Though Purdue maintains an "Adaptive Programs" office in order to assist students with learning and other disabilities, Strahl did not seek out their assistance until his second semester of college, after having received low grades his first semester. Participation in Adaptive Programs made Strahl eligible for certain special accommodations, such as the ability to tape-record lectures and the ability to ask for extra time for test-taking.

In order to satisfy the curricular requirements for his degree, Strahl was required to take a certain number of foreign language courses. He passed both Spanish 101 and Spanish 102. However, he withdrew from Spanish 201 a few weeks into the course. Before he

withdrew, Strahl had requested special accommodations for Spanish 201, which the instructor promised to provide.

Following his withdrawal from Spanish 201, Strahl appealed to the College of Liberal Arts Foreign Language Substitution Committee, which recommended that rather than take a level III and level IV Spanish class, Strahl should take a level I and II course in a language other than Spanish. Strahl then enrolled in French 101.

However, Strahl was caught cheating on his French 101 mid-term. Because he was already on academic probation for a separate incident involving plagiarizing in an English class, he would have faced expulsion from Purdue his cheating in French 101 been reported. Instead of face this consequence, Strahl decided to withdraw from the French course. He again petitioned the Foreign Language Substitution Committee, this time to be allowed to take a foreign culture or literature class. Citing his lack of good faith effort to complete French 101, the Committee denied his request.

In the fall of 2007, Strahl transferred from Purdue's West Lafayette campus to Indiana University Purdue University Indianapolis ("IUPUI"). While at IUPUI, Strahl passed a Latin I course and an East Asian studies course. He again petitioned the Foreign Language Substitution Committee, this time to accept these two courses in fulfillment of his level III and level IV foreign language requirements. His request was granted in February 2008, and he graduated a few months later in May 2008.

### III.  Discussion

With regard to Strahl's ADA claim, Purdue argues that it is a public university created by the Indiana General Assembly and, as such, is entitled to the State's Eleventh Amendment immunity.  See, U.S. Const. amend. XI; Ind. Code §21-23-2-2 (establishing Purdue University).  Furthermore, although Congress expressed its intent to abrogate sovereign immunity by enacting the ADA, Purdue argues that in order for the ADA to validly abrogate sovereign immunity, a plaintiff must allege a constitutional violation, which Strahl has not done.  See, e.g., United States v. Georgia, 546 U.S. 151, 159 (2006) ("insofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity.").

Based upon his response to Purdue's Motion for Summary Judgment, it appears that Strahl has abandoned his ADA claim.  Nonetheless, this Court holds that, in light of the fact that Strahl has not alleged a constitutional violation, Purdue is entitled to summary judgment on the ADA claim pursuant to the Supreme Court's holding in Georgia.

However, Strahl also alleges that Purdue violated Section 504 of the Rehabilitation Act, which states, in relevant part, "No otherwise qualified individual with a disability in the United States, . . .  shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794(a).  See also

29 U.S.C. § 794(b)(2)(A) (stating that colleges and universities are among the institutions explicitly subject to § 504). Although the statutory language of the Rehabilitation Act does not offer specificity with regards to the necessary accommodations an institution must make for a disabled individual, subsequent regulations state that the institution must make "reasonable accommodations." 28 C.F.R. § 41.53. <u>See also</u>, <u>Traynor v. Turnage</u>, 485 U.S. 535, 550 n. 10 (1988) (observing that the subsequent regulations "were drafted with the oversight and approval of Congress and therefore constitute an important source of guidance on the meaning of § 504"). Here, Strahl argues that Purdue failed to accommodate his disabilities in refusing to substitute the language requirements for his desired degree.

Several Circuits have held that in order to prove 'failure to accommodate' under Section 504, a plaintiff must prove that the federally funded institution acted with deliberate indifference. <u>See, e.g.</u>, <u>Bartlett v. N.Y. State Bd. of Law Exam'rs</u>, 156 F.3d 321, 331 (2d Cir. 1998); <u>Duvall v. County of Kitsap</u>, 260 F.3d 1124, 1138 (9th Cir. 2001); <u>Powers v. MJB Acquisition Corp.</u>, 184 F.3d 1147, 1153 (10th Cir. 1999). Here, Purdue urges this court to adopt the precedents of the Second, Ninth, and Tenth Circuits. However, this Court is unaware of any case in which the Seventh Circuit has taken this view. Instead, this Court must decide whether, as a matter of law, Purdue offered Strahl a "reasonable accommodation." <u>See</u> <u>King v. City of Madison</u>, 550 F.3d 598, 600 (7th Cir. 2008) (holding that there is no failure to accommodate where the institution has offered the plaintiff a "reasonable accommodation.").

Before addressing this issue, it bears note that Purdue argues that, "[i]n order to succeed on the merits of his Rehabilitation Act claim against the University, Mr. Strahl must establish that any alleged failure to accommodate him was 'intentional.'" (Docket No. 15 at 14). This argument misstates Seventh Circuit precedent; to the contrary, the Seventh Circuit has held that a plaintiff making a claim under the Rehabilitation Act need not prove discriminatory intent. Washington v. Ind. High Sch. Athletic Assoc.,Inc., 181 F.3d 840, 846 (7th Cir. 1999) (citing McWright v. Alexander, 982 F.2d 222, 228-29 (7th Cir. 1992)). Citing the U.S. Supreme Court's decision in Alexander v. Choate, 469 U.S. 287 (1985), the Seventh Circuit reasoned that requiring proof of discriminatory intent "would be contrary to the intent of Congress." Washington, 181 F.3d at 846 (citing Choate, 469 U.S. at 296-97 ("Discrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference-of benign neglect. . . . [and] much of the conduct that Congress sought to alter in passing the Rehabilitation Act would be difficult if not impossible to reach were the Act construed to proscribe only conduct fueled by a discriminatory intent.")).

In addition, the issue of academic deference is important to this case. Historically, Courts have given varying weight to how much deference ought to be afforded to colleges and universities in determining whether reasonable accommodations have been made for a disabled student, with some Courts stringently evaluating the facts, and others giving great deference to academic decisions. Compare Wynne v. Tufts Univ. Sch. of Med., 932 F.2d 19,

28 (1st Cir. 1991) ("Were the simple conclusory averment of the head of an institution to suffice, there would be no way of ascertaining whether the institution had made a professional effort to evaluate possible ways of accommodating a handicapped student or had simply embraced what was most convenient for faculty and administration.") with Doherty v. Southern Coll. of Optometry, 862 F.2d 570, 576 (6th Cir. 1988) ("we note that this case arises in an academic context where judicial intervention in any form should be undertaken only with the greatest reluctance."). See also Brigid Hurley, Note, Accommodating Learning Disabled Students in Higher Education: Schools' Legal Obligations Under Section 504 of the Rehabilitation Act, 32 B.C. L. Rev. 1051 (1991) (setting forth various courts' deference to academic judgment). The Seventh Circuit has generally given deference to academic decision-making; thus, in evaluating the decisions made by officials at Purdue, this Court will "respect the academic judgment of university faculties" while evaluating whether the accommodations offered were reasonable. Anderson v. Univ. of Wis., 841 F.2d 737, 741 (7th Cir. 1988) (citing Univ. of Mich. v. Ewing, 474 U.S. 214 (1985); Univ. of Mo. v. Horowitz, 435 U.S. 78 (1978)).

Now, turning to the question of whether the accommodations Purdue offered Strahl were "reasonable," it is undisputed that Purdue accommodated Strahl's inability to complete the level III and IV language requirements when, in the fall of 2006, they allowed Strahl to substitute a level I and II course for the level III and IV requirements. (Docket No 14-6 at 31). Had Purdue not done so, this case would have been close. However, in light of this

accommodation, and in light of the fact that Strahl had previously successfully completed a level I and II foreign language course in Spanish, this accommodation was reasonable.

The next spring, after his alleged cheating required Strahl to drop his level I French course, Purdue refused to allow him to substitute a foreign literature class for his already-amended foreign language requirements. When Purdue rejected Strahl's proposed accommodation, they reasoned that he had not made a good faith effort to pass French I. Here again, based on the specific facts of this case, Purdue's refusal to substitute courses is reasonable. Strahl had already passed an equivalent course in Spanish and, at the time he was caught cheating, he was receiving a "C" in his French course–a grade that would have fulfilled his amended foreign language requirements had he not withdrawn from the course due to cheating. Accordingly, it was not an unreasonable inference for Purdue officials to operate under the assumption that once Strahl had passed one set of Level I and II foreign language courses, he was capable of passing another.

## IV. Conclusion

Accordingly, in light of the specific facts of this case, and with all due deference to the relevant academic officials, it is clear that Purdue offered Strahl accommodations that, while unsatisfactory to Strahl himself, were reasonable under the circumstances. Accordingly, Purdue is entitled to summary judgment on the Rehabilitation Act claim.

For the reasons stated herein, the record as construed in favor of Strahl fails to show genuine issues of material fact. Accordingly, Defendant, the Trustees of Purdue University,

is entitled to Summary Judgment under Federal Rule of Civil Procedure 56(c). Therefore,

Defendant's Motion for Summary Judgment is hereby **GRANTED**. This case is now

considered closed with each party to bear its own costs.

**SO ORDERED**.

**DATED: April 22, 2009**                              _____/s/ ALLEN SHARP_____
                                                                  **ALLEN SHARP, JUDGE**
                                                                  **UNITED STATES DISTRICT COURT**